UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
TYREICK GREY,

                                         Plaintiff,

                -against-

CITY OF NEW YORK, NEW YORK CITY DEPARTMENT
OF CORRECTION, CYNTHIA BRANN, ANGEL
VILLALONA, TIMOTHY D. FARRELL, WARDEN OF
GEORGE R. VIERNO CENTER, CAPTAIN JOHN DOE 1,
CORRECTION OFFICER FNU MOOREHEAD,
CORRECTION OFFICER FNU MCNEIL, CORRECTION
OFFICER FNU MARTIN and CORRECTION OFFICER
JOHN DOE 2,

                                         Defendants.
-------------------------------------------------------------------------------X

## COMPLAINT
**Plaintiff Demands
A Trial By Jury**

Plaintiff, by DEVON M. RADLIN, his attorney, respectfully alleges as follows:

### *JURISDICTION*

1.       This action is brought under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth

Amendments of the Constitution of the United States and the Civil Rights Law of the United

States, as codified in Title 18 U.S.C. Sections 242, Title 28, U.S.C. Sections 1331 and 1343 and

Title 42, U.S.C. Sections 1981, 1983 and 1985.

2.       An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

3.       Plaintiff brings this action seeking declaratory relief and damages pursuant to 42

U.S. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the

United States Constitution.

4.       This Court has jurisdiction pursuant to 28 U.S.C. § 2201 to grant declaratory

relief.

5.      On January 22, 2020, within ninety (90) days of the incident, a notice of claim was timely filed as required under General Municipal Law 50e. The claim was issued Claim No. 2020PI003243. A Stipulation of Unavailability was executed on March 10, 2020 due to Plaintiff's incarceration.

6.      Defendant **CITY** has wholly neglected or refused to make any adjustment or payment with regard to Claim No. 2020PI003243.

7.      This action has been commenced within one (1) year and ninety (90) days of the incident.

8.      Plaintiff further invokes the pendent jurisdiction of this Court to consider claims arising under New York State Law.

## *VENUE*

9.      The course of conduct and other acts complained of herein arose and occurred in whole or in part within the County of Bronx and State of New York, in the Southern District of New York.

## *PARTIES*

10.     Plaintiff, ***TYREICK GREY*** (**GREY**), is and was at all times herein mentioned, a citizen and a resident of the State of New York.

11.     The defendant, ***CITY OF NEW YORK***, (**CITY**) is a municipal corporation and political subdivision of the State of New York.

12.     The defendant, ***NEW YORK CITY DEPARTMENT OF CORRECTION*** (**DOC**) is a municipal agency under the supervision and control of the defendant **CITY**.

13.     The defendant, ***CYNTHIA BRANN (BRANN),*** is the Commissioner of the defendant **DOC** employed by the Defendants **CITY** and **DOC**.

2

14.     The defendant, ***ANGEL VILLALONA (VILLALONA),*** is the First Deputy Commissioner employed by the defendants **CITY** and **DOC.**

15.     The defendant, ***TIMOTHY D. FARRELL (FARRELL),*** is the Deputy Commissioner for the Office of Classification and Population Management employed by the defendants **CITY** and **DOC.**

16.     The defendant, ***WARDEN OF GEORGE R. VIERNO CENTER (WARDEN)***, is a warden employed by the defendants **CITY** and **DOC.**

17.     The defendant, ***CAPTAIN JOHN DOE 1*** (**CAPT. JD1),** is a captain employed by the defendants **CITY** and **DOC.**

18.     At all times herein mentioned, Defendant **CAPT. JD1** was assigned to Housing Unit 9B of **GRVC** of defendant **DOC.**

19.     The defendant, ***CORRECTION OFFICER FNU MOOREHEAD*** (**C.O. MOOREHEAD),** is a correction officer employed by the defendants **CITY** and **DOC.**

20.     At all times herein mentioned, Defendant **C.O. MOOREHEAD** was assigned to the SRG Security Department of defendant **DOC.**

21.     The defendant, ***CORRECTION OFFICER FNU MCNEIL*** (**C.O. MCNEIL),** is a correction officer employed by the defendants **CITY** and **DOC.**

22.     The defendant, ***CORRECTION OFFICER FNU MARTIN*** (**C.O. MARTIN),** is a correction officer employed by the defendants **CITY** and **DOC.**

23.     The defendant, ***CORRECTION OFFICER JOHN DOE 2*** (**C.O. JD2),** is a correction officer employed by the defendants **CITY** and **DOC.**

24.     That at all times herein mentioned, defendant **BRANN,** employed by the defendants **CITY** and **DOC,** in the capacity of Commissioner, and was acting in such capacity as

3

an agent, servant and employee of the defendants, **CITY** and **DOC**, and she is sued individually and in his official capacity.

25.     That at all times herein mentioned, defendant **BRANN** is the Commissioner and as such, she is the commanding officer of all defendant **DOC** Correctional personnel, and is responsible for their training, supervision and conduct. She has ultimate responsibility within defendant **DOC** for overseeing the day-to-day operations of the facilities, including George R. Vierno Center (GRVC), and is responsible for ensuring that people incarcerated in defendant **DOC** facilities are protected from assault, harassment and other violence from correctional personnel and inmates and that correctional personnel adhere to Federal and State law, as well as official **DOC** policy.

26.     That at all the times herein mentioned, defendant **BRANN,** was acting under color of state law and under her authority as Commissioner for the defendants, **CITY** and **DOC**.

27.     That at all times herein mentioned, defendant **VILLALONA**, employed by the defendants **CITY** and **DOC,** in the capacity of First Deputy Commissioner, and was acting in such capacity as an agent, servant and employee of the defendants, **CITY** and **DOC,** and he is sued individually and in his official capacity.

28.     That at all times herein mentioned, defendant **VILLALONA** is the First Deputy Commissioner and as such, he is the commanding officer of all defendant **DOC** Correctional personnel, and is responsible for their training, supervision and conduct. He has ultimate responsibility within defendant **DOC** for overseeing the day-to-day operations of the facilities, including GRVC, and is responsible for ensuring that people incarcerated in **DOC** facilities are protected from assault, harassment and other violence from correctional personnel and inmates and that correctional personnel adhere to Federal and State law, as well as official **DOC** policy.

4

29.     That at all the times herein mentioned, defendant **VILLALONA,** was acting under color of state law and under his authority as the First Deputy Commissioner for the defendants, **CITY** and **DOC**.

30.     That at all times herein mentioned, defendant **FARRELL**, employed by the defendants **CITY** and **DOC,** in the capacity of Deputy Commissioner of the Office of Classification and Population Management, and was acting in such capacity as an agent, servant and employee of the defendants, **CITY** and **DOC,** and he is sued individually and in his official capacity.

31. That at all times herein mentioned, defendant **FARRELL** is the Deputy Commissioner of the Office of Classification and Population Management and as such, he is the commanding officer of all defendant **DOC** Correctional personnel, and is responsible for their training, supervision and conduct. He has responsibility within defendant **DOC** for overseeing the day-to-day operations of the facilities, including GRVC, and is responsible for ensuring that people incarcerated in DOC facilities are protected from assault, harassment and other violence and that each person is properly classified and designated by their vulnerability pursuant to DOC Directives and that correctional personnel adhere to Federal and State law, as well as official **DOC** policy. He is responsible for the Safe Prisons/PREA Management Office, Classification and Records, Designation of inmates by their need of and risk to their safety, Correctional Training and Staff Development and the Security Threat Group Management Office.

32.     That at all the times herein mentioned, defendant **FARRELL,** was acting under color of state law and under his authority as Deputy Commissioner of the Office of Classification and Population Management for the defendants, **CITY** and **DOC**.

5

33.     That at all times herein mentioned, defendant **WARDEN**, employed by the defendants **CITY** and **DOC,** in the capacity of Warden, and was acting in such capacity as an agent, servant and employee of the defendants, **CITY** and **DOC,** and he/she is sued individually and in his/her official capacity.

34.     That at all times herein mentioned, defendant **WARDEN** is the Warden of **GRVC** and as such, he/she is the commanding officer of all defendant **DOC** Correctional personnel at **GRVC**, and is responsible for their training, supervision and conduct. She/He has responsibility within defendant **DOC** for overseeing the day-to-day operations of **GRVC**, and is responsible for ensuring that inmates incarcerated in **GRVC** are protected from assault, harassment and other violence and that each person is properly classified and designated by their need of additional protection and/or supervision and that correctional personnel adhere to Federal and State law, as well as official DOC policy.

35.     That at all the times herein mentioned, defendant **WARDEN,** was acting under color of state law and under his/her authority as WARDEN for the defendants, **CITY** and **DOC**.

36.     Defendants **CITY, DOC, BRANN, VILLALONA, FARREL** and **WARDEN,** jointly and severally, are responsible for overseeing, *inter alia,* the Security Operations Department and thus are aware of the dangers facing inmates, specifically inmates who have been assaulted by fellow inmates, and thus are aware of the serious incidents involving inmate on inmate assaults with staffing and operations, policies and procedures and compliance.

37.     That at all times herein mentioned, defendant **CAPT. JD1** was employed by the defendants **CITY** and **DOC,** in the capacity as a captain, and was acting in such capacity as the agent, servant and employee of the defendants, **CITY** and **DOC,** and she/he is sued individually and in his/her official capacity.

6

38.     That at all the times herein mentioned, defendant **CAPT. JD1** was acting under color of state law and under his authority as a captain for the defendants, **CITY** and **DOC**.

39.     That at all times herein mentioned, defendants, **C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD1,** were employed by the defendants **CITY** and **DOC**, in the capacity as correction officers, and were acting in such capacity as the agents, servants and employees of the defendants, **CITY** and **DOC**, and each is sued individually and in their official capacity.

40.     That at all the times herein mentioned, defendants **C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2** were acting under color of state law and under their authority as correction officers for the defendants, **CITY** and **DOC**.

41.     That at all times herein mentioned, each of the defendants were responsible for making and enforcing the policies of defendant **DOC** and were acting under the color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and the City of New York. Defendant **DOC**, through its senior officials, promulgates and implements policies, including but not limited to policies with respect to the use, reporting and investigation of force or abuse by uniformed staff, the rights and privileges of visitors of DOC facilities, security and protective custody policies for inmates and the rights of inmates. The practice of using and allowing unconstitutional force and inmate on inmate assaults at **DOC** facilities, and of covering up of the same by fabricating false charges against the victims, at all relevant times was known to and perpetuated, permitted, encouraged and institutionalized by **DOC** supervisors, including high-ranking **DOC** personnel. Because of the practice of using unconstitutional force, allowing inmate on inmate assaults, making false charges against victims, has been widespread, longstanding, and deeply embedded in **DOC**

7

culture, it constitutes an unwritten municipal policy or custom of the City of New York. The **DOC** is also responsible for the appointment, training, supervision and conduct of all **DOC** personnel, including the individual named Defendants.

## PEOPLE IN CUSTODY

42.     At all times herein mentioned, Defendants jointly and severally, were aware that inmates, like Plaintiff, are vulnerable to assault, harassment and other violence while incarcerated in New York City **DOC** facilities and that there is a heightened risk that they will be physically assaulted. Defendants knew that inmates, who were subject to prior assault by fellow inmates, are physically abused more frequently in prisons and jails than other inmates and are widely considered particularly vulnerable to abuse and assault verbal, in the correctional context and facilities.

43.     At all times herein mentioned, defendants were aware that inmates, who have been previously assaulted by fellow inmates, are particularly vulnerable because DOC has procedures and policies to place inmates who have been assaulted into protective custody.

44.     Defendant **DOC's** written policy recommends that an inmate's SRG status and prior assaults against by fellow inmates be taken into account when assigning housing, including placement in safekeeping, to reduce the possibility of further assault, abuse and harassment. Defendant **DOC's** internal training documents note that inmates who have been previously assaulted by fellow inmates are vulnerable to further assault and abuse while incarcerated and have a greater potential for being victimized than other people in custody, and upon information and belief, Defendants', jointly and severally, were aware of this information in defendant **DOC's** training documents and manuals.

8

**PATTERN, POLICY AND PRACTICE OF BOTH THE FAILURE TO PROTECT
INMATES AND CORRRETIONAL STAFF UTILIZING INMATES TO
CONDUCT VIOLENCE AGAINST OTHER INMATES IN THE CUSTODY OF
NEW YORK CITY'S CORRECTIONAL SYSTEM**

45.     For the past four (4) decades the City of New York, its senior supervisors and correction officers have been repeatedly litigated against for implementing and condoning inmate-on-inmate assaults at Riker's Island Correctional Center (Riker's Island), Manhattan Detention (MDC) and Brooklyn Detention Center (BDC), failing to investigate those assaults and violations, covering up those assaults and violations and bringing false charges against the victims in an effort to mask the misconduct of the officers involved in allowing and failing to prevent or intervene in inmate-on-inmate assaults.

46.     Pursuant to defendant **DOC** Directive 6007R-A, which has been in effect since August 27, 2010 to date, require municipal correctional facilities, such as Rikers Island, MDC and BDC to train their employees the policies and procedures for the assignment of vulnerable inmates into voluntary and involuntary protective custody and the operation of protective custody housing units.

47.     Pursuant to defendant DOC Directive 6007R-A, DOC inmates are to be afforded opportunity to be placed into protective custody housing units. Upon an inmate's request for protection, defendant DOC personnel, who received the request from the inmate, must immediately separate said inmate from other inmates and contact the assigned defendant DOC Captain in order to conduct an interview with said inmate as to their request for protective custody. (See IV. PROCEDURES B(1a) of Directive 6007R-A)

48.     Defendant DOC Directive 6007R-A has set forth factors to consider in order to determine whether an inmate be placed involuntarily or voluntary into protective custody ("PC"). (See IV. PROCEDURES A(1-4) of Directive 6007R-A)

49.     One of the factors to consider in evaluation for PC status is whether an inmate had been previously assaulted by fellow inmates. (See IV. PROCEDURES A(1(d)) of Directive 6007R-A)

50.     Despite defendant DOC Directive 6007R-A, DOC personnel's continuous failure to abide by the policy and procedures in said Directive have manifested a pattern and practice of misconduct of which New York City policymakers have had actual and constructive notice and yet there has not been any implemented practices and policies to avoid these and future violations.

51.     Defendant DOC personnel's turning of blind-eye(s) and deaf-ear(s) to requests for protection by inmates experienced in jail settings is longstanding and well-known by the public. Despite being prohibited by defendant **DOC** policy, a pattern and practice among defendant **DOC** staff of refusing to provide additional protection to inmates who request the same, especially those who have been previously assaulted by fellow inmates, continues.

52.     Further, Defendant DOC has been aware of a pattern and practice of correctional personnel who intentionally place inmates in to housing where planned assaults against them are planned by correctional staff and "hired" inmates by said staff.

53.     As reported by the DAILY NEWS on January 25, 2009, Defendant DOC has engaged in decades long of allowing violence against their inmates, either by staff or orders directed by DOC personnel for other inmates to assault others, such as, "The Program," which was created sometime in 2006 by DOC Correction Officers, who recruited inmates to be

10

members of enforcement for "The Program" and called these inmates, "The Team." These inmates of, "The Team," would be directed by DOC personnel to attack certain inmates of these DOC Correction Officers choice.[1] "The Program," later resulted in the death of Christopher Robinson, age 18, who was beaten to death by members of "The Team" while in custody at Rikers' Island Correctional Center in October 2008, when he refused to give in to demands of, "The Program" and/or "The Team" to join their, "fight club."[2]

The Bronx District Attorney's Office brought criminal charges against some defendant DOC personnel, specifically MICHAEL McKIE (who was sentenced to two (2) years for assault), KHALID NELSON (one year sentence for attempted assault) and DENISE ALBRIGHT (sentenced to one (1) year for assault in 2012) for crimes committed out of their involvement in, "The Program."[3]

54.    Despite criminal prosecution and news headlines regarding the brutal violence from, "The Program," at defendant DOC, as reported by the Distinct Today[4] and DAILY NEWS[5] on November 16, 2020, defendant DOC correctional personnel evolved "The Program" into a new and improved sadistic scheme called, the "World Tour." The "World Tour" is a "secret scheme" in Riker's Island in which Correction Officers "deputize" inmates to violently control certain members of the jail's population. The main control device against inmates who do not, "get in line," is that defendant DOC correctional personnel transfer certain inmates, both their potential victims and/or their "enforcers" of the "World Tour," to certain housing areas

---

[1] https://www.nydailynews.com/new-york/secrets-sadistic-rikers-island-society-article-1.422289
[2] https://www.nydailynews.com/news/crime/christopher-robinson-brutal-beating-death-rikers-island-left-mom-broken-article-1.385225
[3] https://nypost.com/2012/05/06/brutal-system-of-teen-beatings-continues-at-rikers-islands-rndc-prison/
[4] https://distincttoday.net/2020/11/16/rikers-island-corrections-officers-accused-of-deputizing-inmates-to-violently-enforce-rules/
[5] https://www.nydailynews.com/new-york/ny-rikers-island-world-tour-suit-20201116-q67enoqddfapri76iekxcrg2d4-story.html

where these violent attacks are allowed against these inmates. The victims are then moved to other housing areas in which they are continually faced with violence and assaulted. In further cover-up of their constitutional violations against these victim inmates, defendant DOC correctional staff would then issue disciplinary charges against the victim and place them in Special Housing Units (SHU) as further punishment and to intimidate the victim to refrain from making allegations as to the assault against them.

55.     Out of this on-going pattern and policy of allowing violence to be condoned, directed and managed by defendant DOC personnel, it goes with common sense that defendant DOC Staff would reject and fail to abide by their own directives in place to protect inmates, specifically Directive 6007R-A.

56.     As reported on September 19, 2020 by ABC 7 Eyewitness News[6], serious injuries from inmate violence has increased by 284% in defendants CITY and DOC jails according to the DOC Commission Defendant *BRANN's* report[7].

57.     Defendant DOC staff continue to engage, allow, condone, and orchestrate violence against inmates of their choosing in their care, custody and control which has created a policy and custom of same in DOC.

58.     On August 4, 2014, the U.S. Attorney for the Southern District of New York sent a "findings letter" to Defendants **CITY** and **DOC** which reported on the results of a multi-year investigation on the notorious use of excessive force at the DOC against adolescent inmates and noted that its investigation revealed and suggested systemic deficiencies. *See* Report from United States Attorney Preet Bharara to New York City Mayor Bill de Blasio (Aug. 4, 2014) ("U.S. Attorney Report").

---

[6] https://abc7ny.com/nyc-correction-doc-new-york-city-department-of-jails/6442337/
[7] https://www1.nyc.gov/assets/operations/downloads/pdf/mmr2020/doc.pdf

59.     In the "findings letter," it stated that there is a "deep-seated culture of violence" "pervasive" across the various facilities on Rikers Island and that defendant, "**DOC** staff routinely utilize force not as a last resort, but instead as a means of "control" and to "punish disorderly or disrespectful behavior." In addition, the "findings letter" identified the following systemic deficiencies: "**inadequate reporting by staff of the use of force, including false reporting;… an inadequate inmate grievance system;… (3) inadequate supervision of inmates by staff.**"

60.     The U.S. Attorney Report, at all times herein complained, there was a pattern, practice and custom by defendant **DOC** staff routinely, "inadequately reporting," "false reporting," and, "inadequate supervision of inmates by staff," which could be extended to defendant DOC staff committing the same for responses to and reports of inmates requesting protection, resulting in further inmate-on-inmate assault(s) against inmates and failure to supervise said inmates, like plaintiff.

61.     Through defendant **DOC's** elaborate reporting system, the Wardens, Deputy Wardens and their staff were aware of a pattern of a large number of incidents involving the failure to adequately respond to inmates requests for additional supervision, specifically those inmates who are vulnerable to assault, resulting in assault(s) against said inmates causing them to suffer serious psychological and physical injuries due to DOC personnel's failure to take sufficient and necessary steps and intervention to curb these assaults and violations.

62.     The defendant **DOC** and the Wardens, Deputy Wardens and their staff have also been made aware of the failure of the defendant **DOC** to bring disciplinary charges against its captains and correction officers to promote institutional reform, punish defendant **DOC** staff who fail to abide by their directives, specifically **DOC** Directive 6007R-A.

13

.  63.     Though all these cases and defendant **DOC** reports, the Wardens, Deputy Wardens and their staff have been made aware of the widespread practice by correctional staff to ignore inmates requests for additional protection, deliberately plan assaults against vulnerable or "out-of-line" inmates and their failure to abide by DOC Directive 6007R-A. They have also been made aware of the failures of the defendant **DOC** Investigation Division to adequately investigate allegations of these DOC personnel's failure to abide by DOC Directive 6007R-A, a practice that causes, condones and allows further abuse.

64.     These Wardens, Deputy Wardens and their staff cannot credibly contend that they are unaware of such abuse that occurs with regularity in the New York City correctional system and the failure of the defendant **DOC** to take sufficient measures to investigate and discipline correctional staff for this abuse.

65.     There is a pattern, practice and policy pursuant within the DOC to which inmates who request additional protection and/or PC, specifically those who were subject to prior inmate assault, are ignored and said protection is not afforded to said inmates in violation of DOC Directive 6007R-A when in the custody and control of defendant **DOC.**

66.     There is a pattern, practice and policy pursuant within the DOC to which correctional staff orchestrates assaults against inmates by transferring or placing potential victim inmates into housing areas in which planned assaults against them are organized by correctional staff and inmates.

67.     The violence, deprivation of civil rights and cover-up that occurred in this case are not isolated events.

68.     DOC's failure and ignoring significant failures in meeting standards as to the care, custody and control of inmates has been a deep-seated culture for decades.

14

69. In 2015, after the Legal Aid Society filed a lawsuit as to the deep-seated violence and constitutional violations at Riker's Island in 2011 (*Nunez v. City of New York*, 11CV5845(LTS-TKH)(S.D.N.Y.)), the defendant City of New York entered into an agreement to implement a series of violence-reduction measures in effort to protect inmates. Out of this agreement, an independent federal monitor was assigned to oversee said agreement.

70. In May 2020, a report was issued by Steve Martin, the independent federal monitor of the 2015 agreement, in which stated that the average monthly use-of-force by Correction Officers on Riker's Island had more than doubled (54%) between the years 2016 and 2020 despite a decrease in overall inmate population.[8] Further, other reports found that defendant DOC, "continues to struggle to properly manage the use of force by its staff," and had engaged in a, "pattern of unprofessional conduct and hyper-confrontational behavior," including the misuse of pepper spray, improper blows to the head, and "painful escort techniques" by Correction Officers.

71. In response to these federal monitor reports, Audrey Strauss, Esq., the acting United States attorney for the Southern District of New York stated, "while this Office recognizes that changing a decades-long culture of violence is not a simple task, the City and DOC must do better…," and issued a remedial order to address inmate safety at **DOC**.

72. The Manhattan U.S. Attorney Office announced that this new remedial Order and agreement with DOC will address reforms to better supervise Captains, improve mental-health evaluations of violent inmates and develop new protocols for emergency response units, among other measures.

---

[8] https://www.nytimes.com/2020/08/06/nyregion/rikers-island-violence-guards.html

73.     It is clear that despite multiple agreements and investigations into the inadequate safety, training, supervision and protection of inmates in custody of the City and DOC, there are still significant failures of the DOC to provide inmates with adequate safety and protection, specifically those inmates who have suffered from being assaulted by fellow inmates and request additional protection which are ignored and result in further assault(s) against them.

## FACTS

### *September 2019*

74.     In September 2019, while Plaintiff was incarcerated at the correctional facility known as the George R. Vierno Center (GRVC), located at 09-09 Hazen Street, East Elmhurst, New York and housed in Housing Area 9B of GRVC, he was assaulted by ten (10) inmates, including inmate Shawn Gray (Book-and-Case Number: 895-18-01260) (**"Inmate Gray"**), which resulted in serious and permanent physical and psychological injuries.

75.     Plaintiff was the only inmate who received an infraction ticket for the assault against him in September 2019, and he was punished with incarceration in Special Housing Unit ("SHU"), aka "the Box," for eleven (11) days.

76.     Upon information and belief, Defendant DOC correctional staff allowed and condoned **Inmate Gray** to assault fellow inmates as he pleased to "control the jail" as he **[Inmate Gray]** saw fit.

77.     Defendants ***BRANN, VILLALONA, FARRELL*** and ***WARDEN,*** jointly and severally, failed to properly investigate and interview plaintiff as to the inmate-assault against him in September 2019 in violation of DOC Directive 6007R-A.

16

78.     Defendants **BRANN, VILLALONA, FARRELL** and **WARDEN,** jointly and severally, failed to properly classify plaintiff as an inmate requiring additional protection and/or PC status due to the inmate-assault against him in September 2019.

*November 2019*

79.     On November 25, 2019, at or about 8:00 PM, Plaintiff was released from SHU.

80.     Plaintiff was immediately interviewed by defendant **C.O. MOOREHEAD**.

81.     During the interview, Plaintiff advised defendant **C.O. MOOREHEAD** that he could not return to Housing Area 9B of GRVC because he was jumped by inmates, specifically **Inmate Gray**, and that his life and safety would be in danger if he were housed in Housing Area 9B of GRVC.

82.     Plaintiff asked for additional protection from defendant **C.O. MOOREHEAD** due to threats made against his life and safety by other inmates, specifically **Inmate Gray** and other inmates, whose names and book-and-case numbers are unknown to plaintiff.

83.     Defendant **C.O. MOOREHEAD** responded to Plaintiff, in sum and substance, "This it out of my hands. Office of Special Investigations Unit ("OSIU") has you placed in Housing Area 9B of GRVC."

84.     Defendant **C.O. MOOREHEAD** refused to contact a defendant **DOC** Captain to interview plaintiff as to his request for additional protection and refused to separate Plaintiff from other inmates until an interview as to his request for PC could be conducted in violation of defendant DOC Directive 6007R-A.

85.     On November 25, 2019, at or about 9:00 PM, Plaintiff was transported to Housing Area 9B of GRVC.

17

86.     Upon arriving in Housing Area 9B of GRVC, inmates, specifically **Inmate Gray,** approached Plaintiff and stated, "You have forty-eight (48) hours to pack up and leave or you're getting fucked up."

87.     On November 26, 2019, defendant **C.O. MCNEIL** was assigned to Housing Area 9B of GRVC.

88.     On November 26, 2019, Plaintiff approached defendant **C.O. MCNEIL** and advised that he had to be transferred from Housing Area 9B of GRVC due to threats against his life and safety by **Inmate Gray** and other inmates, whom he knew by nickname, including but not limited to, "Millz"; "KK"; "Ghotti"; "Clizzy"; and "Nutty."

89.     Defendant **C.O. MCNEIL** responded to Plaintiff, "I don't know why they put you back in this house. You're not supposed to be here. Let me email the Dep."

90.     Defendant **C.O. MCNEIL** failed to contact a defendant **DOC** Captain to interview plaintiff as to his request for additional protection and refused to separate Plaintiff from other inmates until an interview as to his request for PC could be conducted in violation of defendant DOC Directive 6007R-A.

91.     From November 26, 2019 to November 28, 2019, Plaintiff was not transferred from Housing Area 9B of GRVC.

92.     From November 26, 2019 through November 28, 2019, Plaintiff made continuous requests to defendant **DOC** Correctional personnel to be transferred from Housing Area 9B due to the continuous threats made against his life and safety by **Inmate Gray** and other inmates, whom he knew by nickname, including but not limited to, "Millz"; "KK"; "Ghotti"; "Clizzy"; and "Nutty."

18

93.     From November 26, 2019 through November 28, 2019, Plaintiffs requests to be transferred from Housing Area 9B due to threats against his life and safety were ignored.

94.     From November 26, 2019 through November 28, 2019, defendant **DOC** personnel failed to contact a defendant **DOC** Captain to interview plaintiff as to his need for additional protection.

95.     From November 26, 2019 through November 28, 2019, defendant **DOC** personnel failed to separate plaintiff from other inmates pending a determination of his need for additional supervision.

96.     On November 28, 2019, defendants **C.O. MARTIN** and **C.O. JD2,** jointly and severally, were assigned to Housing Area 9B of GRVC.

97.     On November 28, 2019, at or about 1:00 PM, Plaintiff approached defendants **C.O. MARTIN** and **C.O. JD2,** who were both at the Correction Officer desk inside Housing Area 9B of GRVC, in order to be escorted for a visit.

98.     On November 28, 2019, at or about 1:00 PM, **Inmate Gray** approached plaintiff, defendants **C.O. MARTIN** and **C.O. JD2** at the Correction Officer desk inside Housing Area 9B of GRVC.

99.     While in the presence of defendant **C.O. MARTIN, Inmate Gray** said to Plaintiff, "Didn't I tell you that you had 48 hours to pack up? You are out of here tonight."

100.    Plaintiff immediately said to defendants, **C.O. MARTIN** and **C.O. JD2,** "Please call a defendant **DOC** Captain, because I have to be moved from Housing Area 9B of GRVC. You heard him ("Inmate Gray"). He is going to have me killed."

101.    Defendant **C.O. MARTIN** responded to Plaintiff, "I don't got time for this shit. Handle your business."

19

102.     Defendants **C.O. MARTIN** and **C.O. JD2,** jointly and severally, failed to contact a defendant **DOC** Captain to interview plaintiff as to his need for additional protection in violation of DOC Directive 6007R-A.

103.     Defendants **C.O. MARTIN** and **C.O. JD2,** jointly and severally, failed to separate plaintiff from other inmates pending a determination of his need for additional supervision in violation of DOC Directive 6007R-A.

104.     On November 28, 2019, at or about 3:15 P.M. - 3:30 PM, while plaintiff was inside his cell 5, **Inmate Gray** entered Plaintiffs' cell and shut the cell door to lock the door.

105.     Plaintiff screamed out for help and for a defendant **DOC** Correction Officer to open his cell door.

106.     **Inmate Gray** assaulted plaintiff causing him serious and permanent physical and psychological injuries.

107.     During **Inmate Gray's** assault on plaintiff, the door to plaintiffs' cell opened and plaintiff ran into the Dayroom Area of Housing Area 9B of GRVC and was then assaulted by ten (10) other inmates, specifically, **Inmate Gray** and other inmates, whom he knew by nickname, including but not limited to, "Millz"; "KK"; "Ghotti"; "Clizzy"; and "Nutty."

108.     The assault on plaintiff lasted approximately twenty (20) minutes.

109.     Defendants **C.O. MARTIN** and **C.O. JD2,** jointly and severally, had opportunity to intervene and assist plaintiff, but refused to do so.

110.     After the assaults on plaintiff, Plaintiff was forced to wait two (2) hours for medical treatment due to the defendant **CAPT. JD1's** failure to secure an escort for plaintiff causing plaintiff to suffer conscious pain and his injuries to worsen due to the delay in receiving medical treatment.

111.     On November 28, 2019, at approximately 6:00 P.M., Plaintiff was transported out of Housing Area 9B by stretcher and taken to Elmhurst Hospital.

112.     Defendants' failed to provide immediate adequate and proper medical treatment to Plaintiff causing his injuries to worsen and his suffering to increase.

113.     Defendants' correction officers wrote Plaintiff a ticket for this assault.

114.     Plaintiff never had a hearing on said Ticket.

115.     Plaintiff was punished to thirty-eight (38) days in the solitary confinement; Enhance Restraints; and Red ID Status without a Hearing due to this ticket for the assault against him in violation of his civil rights for due process.

116.     Defendants', *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN*, their captains, correction officers, employees, servants, officers, including but not limited to, defendants, **CAPT. JD1, C.O. MOOREHEAD, C.O. MARTIN, C.O. MCNEIL** and **C.O. JD 2,** jointly and severally, falsely charging plaintiff with an infraction they knew to have false charges, their failure to provide plaintiff his due process with a Hearing on his Infraction ticket and the resulting punishment of said Infraction Ticket evince a conspiracy to cover-up their constitutional violations against plaintiff.

117.     Due to the above, plaintiff suffered suffer serious and permanent physical and psychological injuries, including but not limited to, multiple stabbings, specifically to his chest, back and face resulting in a collapsed lung; thirty (30) inch laceration to back; laceration to forehead; laceration to left check; laceration under right eye; thirty (30) staples to laceration on back; contusions and bruises on body, specifically arms; and scratches and lacerations to face; fear; anxiety; depression; nightmares; post-traumatic stress disorder; civil rights violations;

hospitalization; intensive-care unit hospitalization; and future medical and psychological medical treatment.

118.   The defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL, WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, committed the following acts:

    a)  Refused to aid and safeguard plaintiff from assault having been given actual notice by plaintiff.

    b)  Created and maintained an unsafe and dangerous environment for the plaintiff by permitting assaults against inmates and allowing inmates to control the jail.

    c)  Covered-up the actions of each other.

    d)  Knowingly, intentionally and maliciously harassed, taunted, intimidated and caused the plaintiff to be assaulted.

    e)  Knowingly and intentionally violated the plaintiff's rights as guaranteed to him by the constitutions of the United States and New York, as well as, Federal and State case law.

    f)  The actions of the defendants, **WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** constituted Cruel and Unusual Punishment in violation of plaintiff's Eighth (8th) Amendment Rights when the sole purpose of the defendant's actions was to harass, injure, humiliate and intimidate plaintiff.

    g)  The actions of each defendant were malicious and sadistic.

    h)  The actions of the defendants, jointly and severally, specifically allowing the assault on the plaintiff, were of the nature of a hate crime against the plaintiff.

i)   Refused to protect plaintiff from inmate upon inmate assault

j)   Failed to monitor threatening activity in the jail.

k)   Failed to intervene, prevent and protect plaintiff from assault.

l)   In furtherance of conspiracy against plaintiff, defendants' falsely charged plaintiff with an infraction resulting in further unlawful and unconstitutional punishment against plaintiff.

m)  Violated plaintiff's due process rights by submitting plaintiff to discipline and RED-ID Status without a hearing.

n)   Intentionally recruited, utilized and directed other inmates, specifically **Inmate Gray** and other inmates, whom he knew by nickname, including but not limited to, "Millz"; "KK"; "Ghotti"; "Clizzy"; and "Nutty," to assault Plaintiff.

### *FIRST CAUSE OF ACTION*
*(STATE - NEGLIGENCE)*

119.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "118" herein, as if the same were set forth more fully and at length.

120.   That the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL, WARDEN,* jointly and severally, acting in active concert, their captains, correction officers, agents, servants, officers and employees, specifically, *CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, failed to supervise their captains and correction officers, causing plaintiff to be assaulted and to suffer serious and permanent injuries.

121.     That the defendants, **_CITY, DOC, BRANN, VILLALONA, FARRELL,_** **_WARDEN,_** jointly and severally, are liable for the actions of its employees, **_CAPT. JD1, C.O._** **_MOOREHEAD, C.O. MCNEIL, C.O. MARTIN_** and **_C.O. JD2._**

122.     That by reason of the foregoing, plaintiff has suffered substantial damages.

123.     That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

### _SECOND CAUSE OF ACTION_
### _(STATE- NEGLIGENT HIRING)_

124.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "118" and "120" through "123" of this complaint, with the same force and effect as if set forth herein at length.

125.     That the defendants, **_CITY, DOC, BRANN, VILLALONA, FARRELL_** and **_WARDEN,_** jointly and severally, their captains, correction officers, agents, servants, officers and employees were negligent in their hiring and supervising of defendants, **_CAPT. JD1, C.O._** **_MOOREHEAD, C.O. MCNEIL, C.O. MARTIN_** and **_C.O. JD2._**

126.     That the defendants, **_CITY, DOC, BRANN, VILLALONA, FARRELL_** and **_WARDEN,_** jointly and severally, acting in active concert, their captains, correction officers, agents, servants, officers and employees, specifically, **_CAPT. JD1, C.O. MOOREHEAD, C.O._** **_MCNEIL, C.O. MARTIN_** and **_C.O. JD2,_** jointly and severally, failed to train their captains, correction officers, causing plaintiff to be assaulted and suffer constitutional violations which caused plaintiffs' to suffer serious and permanent injuries.

127.     That the defendants, **_CITY, DOC, BRANN, VILLALONA, FARRELL_** and **_WARDEN_**, jointly and severally, are liable for the actions of its employees, **_CAPT. JD1, C.O._**

*MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2.*

128. That the damages herein exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

129. That by reason of the foregoing, plaintiff has suffered substantial damages.

### ***THIRD CAUSE OF ACTION***
### *(FEDERAL- FAILURE TO TRAIN AND SUPERVISE)*

130. Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "118", 120" through "123" and "125" through "129" herein, as if the same were set forth herein more fully and at length.

131. That defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN*, jointly and severally, by their deliberate acts, gross negligence and reckless conduct in failing to adequately train, discipline and supervise defendants, *CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* and in their failure to promulgate and put into effect appropriate rules and regulations applicable to the duties, conduct, activities and behavior of their agents, servants and employees, directly caused the harm suffered by plaintiff.

132. That the acts of the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL*, *WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, committed under color of state law, deprived the plaintiff of his rights, privileges and immunities as guaranteed to him by the First, Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

133. That by reason of the foregoing, the plaintiffs have suffered substantial damage.

134. That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

### FOURTH CAUSE OF ACTION
#### (STATE- FAILURE TO TRAIN AND SUPERVISE)

135. Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "118", 120" through "123", "125" through "129" and "131" through "134" herein, as if the same were set forth herein more fully and at length.

136. That defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL*, *WARDEN*, jointly and severally, by their deliberate acts, gross negligence and reckless conduct in failing to adequately train, discipline and supervise defendants, *CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* and in their failure to promulgate and put into effect appropriate rules and regulations applicable to the duties, conduct, activities and behavior of their agents, servants and employees, directly caused the harm suffered by plaintiffs.

137. That the acts of the defendants, *CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, committed under color of state law, deprived plaintiff of his rights, privileges and immunities as guaranteed to him by the New York State Constitution.

138. That by reason of the foregoing, the plaintiff has suffered substantial damages.

139. That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

### FIFTH CAUSE OF ACTION
#### (FEDERAL- FAILURE TO INTERVENE – §1983)

140. Plaintiff repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "118" herein, as if the same were set forth herein more fully and at length.

26

141. Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL, WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, observed and/or had reason to know that plaintiffs' constitutional rights were being violated.

142. Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL, WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, had a realistic opportunity to intervene to prevent harm from occurring, specifically the assault against plaintiff.

143. Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL, WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, violated their duty to intervene and to protect the constitutional rights of citizens, specifically plaintiff, from infringement by other law enforcement officers in their presence.

144. The above actions committed by defendants, jointly and severally, were a violation of plaintiffs' civil rights.

145. That by reason of the foregoing, plaintiff has suffered substantial damages.

146. That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

## SIXTH CAUSE OF ACTION
### *(§1983- Failure to Protect)*

147. Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "118" of the complaint, as if the same were set forth more fully and at length herein.

148.    That as a direct and proximate result of the intentional acts of the defendants, **WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, all committed under color of state law and under their authority as warden, captain and correction officers employed by the defendants, **CITY, DOC, BRANN, VILLALONA** and **FARRELL**, jointly and severally, and while acting in the scope of their employment, and pursuant to authority vested in them by defendants, **CITY, DOC, BRANN, VILLALONA** and **FARRELL**, the defendants, **WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** failed to protect plaintiff from assault and by doing so caused the plaintiff to be assaulted, as well as, humiliated and degraded by other inmates.

149.    That by engaging in the foregoing acts, practices and course of conduct, defendants, **WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** used their positions as a uniformed City of New York warden, captain and correction officer for improper purposes, subjecting the plaintiff to humiliation, degradation, physical abuse, deprivation of his rights, privileges and immunities as guaranteed to him by the First, Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and in that the plaintiff was denied his protected rights to be free from unlawful and illegal assault of his person by other inmates.

150.    That none of the aforesaid acts upon the plaintiff were done as a consequence of any improper, criminal or suspicious conduct on the part of the plaintiff or anyone on his behalf.

### SEVENTH CAUSE OF ACTION
#### (FEDERAL- RIGHT TO DUE PROCESS)

151.    Plaintiff repeats and realleges each and every allegation contained in paragraphs of the complaint numbered "1" through "118", "120" through "123", "125" through "129", "131" through "134" and "136" through "139" herein with the same force and effect as if set forth herein at length.

152.    The above actions of the Defendants, jointly and severally, particular the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL, WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2*, jointly and severally, violated the plaintiffs' right to due process when they falsely charged plaintiff with an infraction resulting in further unlawful and unconstitutional punishment against plaintiff when they knew that the plaintiff had not committed any infraction and was in fact the victim.

153.    Defendants, jointly and severally, particular the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL, WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2*, committed the following in furtherance of violation of plaintiffs' right to due process: (1) covered up their actions; (2) falsely charged plaintiff with an infraction for violations he did not commit; (3) punished plaintiff by subjecting him to consequences from their false infraction allegations; (4) subjected plaintiff to punishment without a hearing; and (5) attempted to prevent plaintiff from redress for the violations.

154.    The above constitutional violations are all actionable under and pursuant to the New York State Constitution and 42 U.S.C. §§ 1981, 1983, 1985 and 1986.

155.    The above actions of the defendants, individually and/or vicariously by and through their agents, servants and/or employees, were intentional, willful, malicious and

29

performed with reckless disregard for and deliberate indifference to plaintiffs' rights and physical well-being.

156.    The above constitutional violation caused immediate injury in the form of physical and emotional pain, suffering, extreme emotional distress, assault, hospitalization in intensive care, fright, humiliation, embarrassment and deprivation of plaintiffs' constitutional rights.

157.    That by reason of the foregoing, plaintiff has suffered substantial damages.

158.    That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

### *EIGHTH CAUSE OF ACTION*
*Conspiracy 42 U.S. §1985(3)*

159.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "118" of the complaint, as if the same were set forth herein more fully and at length.

160.    The defendants, **BRANN, VILLALONA, FARRELL, WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** under color of state law, each aiding and abetting one another with knowledge of the systematic violation of the plaintiff's Constitutional and Civil Rights as previously alleged, did conspire to prevent the plaintiff from obtaining redress from such violations and did further agree to undertake any actions necessary to hide, cover up, and falsely justify their actions, and in furtherance of, they did commit the following acts:

   a)   Refused to aid and safeguard plaintiff from assault having been given actual notice by plaintiff.

b) Created and maintained an unsafe and dangerous environment for the plaintiff by permitting assaults against inmates and allowing inmates to control the jail.

c) Covered-up the actions of each other.

d) Knowingly, intentionally and maliciously harassed, taunted, intimidated and caused the plaintiff to be assaulted.

e) Knowingly and intentionally violated the plaintiff's rights as guaranteed to him by the constitutions of the United States and New York, as well as, Federal and State case law.

f) The actions of the defendants, **BRANN, VILLALONA, FARRELL, WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** constituted Cruel and Unusual Punishment in violation of plaintiff's Eighth (8th) Amendment Rights when the sole purpose of the defendant's actions was to harass, injure, humiliate and intimidate plaintiff.

g) The actions of each defendant were malicious and sadistic.

h) The actions of the defendants, jointly and severally, specifically allowing the assault on the plaintiff, were of the nature of a hate crime against the plaintiff.

i) Refused to protect plaintiff from inmate upon inmate assault

j) Failed to monitor threatening activity in the jail.

k) Failed to intervene, prevent and protect plaintiff from assault.

l) In furtherance of conspiracy against plaintiff, defendants' falsely charged plaintiff with an infraction resulting in further unlawful and unconstitutional punishment against plaintiff.

31

m) Intentionally recruited, utilized and directed other inmates, specifically **Inmate Gray** and other inmates, whom he knew by nickname, including but not limited to, "Millz"; "KK"; "Ghotti"; "Clizzy"; and "Nutty," to assault Plaintiff.

161. That by engaging in the foregoing acts, all committed under color of state law and under their authority as commissioner, warden, captain, correction officers of the defendants, **CITY, DOC, BRANN, VILLALONA** and **FARRELL,** jointly and severally, and while acting in the scope of their employment and pursuant to authority vested in them by the defendants, **CITY, DOC, BRANN, VILLALONA** and **FARRELL,** the defendants, jointly and severally, entered into and carried out a plan and scheme designed and intended to deny and deprive the plaintiff of his rights, privileges and immunities as guaranteed to him by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and in fact did so deny and deprive the plaintiff of his rights, privileges and immunities.

## NINTH CAUSE OF ACTION
### *(Monell)*

162. Plaintiff repeats and realleges each allegation contained in paragraphs numbered "1" through "118" of the complaint, as if the same were set forth more fully and at length herein.

163. Plaintiff seeks to hold the defendants, **CITY, DOC, BRANN, VILLALONA** and **FARRELL,** jointly and severally, liable under the theory of Municipal Liability. Defendants, **CITY, DOC, BRANN, VILLALONA** and **FARRELL,** jointly and severally, failure to enact a policy or to turn a blind-eye to the existence of a policy and custom, the defendants, **CITY, DOC, BRANN, VILLALONA** and **FARRELL,** jointly and severally, deliberate indifference to the training of its employees, the lack of supervision and the failure to enact safeguards or a

complaint procedure was the causal connection that violated plaintiff's constitutional rights. The policy, practice or custom outlined here were not formally adopted but had the effect of being one.

      a.    **Existence of a Policy and Custom**

The policy complained of here was pronounced or tacit and reflected in either action or inaction.

    (i)    Defendants' **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, were aware that Plaintiff had been previously assaulted by inmates in September 2019 and failed to abide by their DOC Directive 6007R-A, allowed their correctional personnel to engage and recruit inmates to assault fellow inmates, specifically plaintiff, and failed to investigate the assaults to evaluate if Plaintiff should be placed in involuntary or voluntary PC. Further, Defendants', **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, were not disciplined for their conduct. Defendants' **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, behavior towards Plaintiff, specifically their allowance of other inmates to assault plaintiff, their failure to investigate, interview and abide by DOC Directive 6007R-A was open and obvious to defendants, **CITY, DOC, BRANN, VILLALONA** and **FARRELL,** jointly and severally, and their personnel, but nothing was done to further prevent or stop said violations against Plaintiff by defendants **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally.

33

(ii)     Inmates at Rikers' Island, specifically GRVC, made numerous complaints to DOC correction personnel about defendants **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, failure to protect inmates and to abide by DOC Directive 6007R-A. Defendants **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, misconduct was reported to supervisors at **DOC**, but none were ever disciplined. There are no policies in place to prevent Defendants **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, to ignore inmates like plaintiff, who request protective custody. Defendants **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, and other DOC correctional personnel are able to defend themselves by merely stating that said inmate, like plaintiff, never requested protective custody.

(iii)    Inmates at Rikers' Island, specifically GRVC, made numerous complaints to DOC correction personnel about defendants **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, failure to protect inmates from other inmates, who were recruited by defendant DOC personnel to act as "enforcers" to control the jail population for defendants correctional personnel. Defendants **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, misconduct was reported to supervisors at **DOC**, but none were ever disciplined nor was an investigation initiated into allegations that said defendants were engaged in scheme to allow, condone and orchestrate assaults against inmates. There are no

34

policies in place to prevent Defendants **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, to recruit other inmates to act as their enforcers to engage in assaults on fellow inmates like plaintiff. Defendants **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, and other DOC correctional personnel are able to defend themselves by merely stating that said inmate, like plaintiff, never requested protective custody nor were they aware of any threat(s) to plaintiffs safety by said "enforcer" inmates.

(iv)   Defendant ***BRANN*** was/is a Commissioner at **DOC.** During the period of September 2019 to November 28, 2019, defendant ***BRANN*** was fully aware of the misconduct taking place at **DOC** but failed to take any action. Defendant ***BRANN*** received reports from other defendant ***DOC*** correctional personnel who witnessed Defendants, **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, conduct between them and Plaintiff. Defendant ***BRANN*** did nothing. Further, Defendant ***BRANN*** was receiving reports of increasing inmate-on-inmate assaults within defendant ***DOC*** despite the decrease of population in said facilities and that correctional personnel were involved in the orchestration of assaults against inmates by fellow inmates. Defendant ***BRANN*** did nothing in response to these reports.

(v)   Defendant ***VILLALONA*** was/is a First Deputy Commissioner at **DOC.** During the period of September 2019 to November 28, 2019, defendant ***VILLALONA*** was fully aware of the misconduct taking place at **DOC** but failed to take any action. Defendant ***VILLALONA*** received reports from other defendant ***DOC***

35

correctional personnel who witnessed Defendants, **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, conduct between them and Plaintiff. Defendant *VILLALONA* did nothing. Further, Defendant *VILLALONA* was receiving reports of increasing inmate-on-inmate assaults within defendant *DOC* despite the decrease of population in said facilities and that correctional personnel were involved in the orchestration of assaults against inmates by fellow inmates. Defendant *VILLALONA* did nothing in response to these reports.

(vi)   Defendant *FARRELL* was/is a Deputy Commissioner at **DOC.** During the period of September 2019 to November 28, 2019, defendant *FARRELL* was fully aware of the misconduct taking place at **DOC** but failed to take any action. Defendant *FARRELL* received reports from other defendant *DOC* correctional personnel who witnessed Defendants, **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, conduct between them, **Inmate Gray** and Plaintiff. Defendant *FARRELL* did nothing. Further, Defendant *FARRELL* was receiving reports of increasing inmate-on-inmate assaults within defendant *DOC* despite the decrease of population in said facilities and reports that correctional personnel were involved in the orchestrated of said assaults against inmates. Defendant *FARRELL* did nothing in response to these reports.

(vii)  Defendant *WARDEN* was/is a Warden at **DOC,** specially GRVC during the period of September 2019 to November 28, 2019. Defendant *WARDEN* was fully aware of the misconduct taking place at **DOC,** specifically GRVC, but failed to

take any action. Defendant **WARDEN** received reports from other defendant **DOC** correctional personnel who witnessed Defendants, **CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, conduct between them, **Inmate Gray** and Plaintiff. Defendant **WARDEN** did nothing. Further, Defendant **WARDEN** was receiving reports of increasing inmate-on-inmate assaults within defendant **DOC** despite the decrease of population in GRVC and reports that correctional personnel were involved in the orchestrated of said assaults against inmates. Defendant **WARDEN** did nothing in response to these reports.

(viii)    Defendant **CAPTAIN JD1** was/is a Captain at **DOC.** During the period of September 2019 to November 28, 2019, defendant **CAPTAIN JD1** was fully aware of the misconduct taking place at **DOC,** specifically GRVC, but failed to take any action. Defendant **CAPTAIN JD1** received reports from other defendant **DOC** correctional personnel who witnessed Defendants, **C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, conduct between them, **Inmate Gray** and Plaintiff. Defendant **CAPTAIN JD1** did nothing.

(ix)    Defendants, **BRANN, VILLALONA, FARRELL** and **CAPT. JD1,** jointly and severally, did not conduct any further investigation into defendants **C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN** and **C.O. JD2,** jointly and severally, despite receiving information from Plaintiff that he had requested protective custody prior to the assault against him on November 28, 2019 and he was ignored, specifically Plaintiff's Grievance as to the failure to protect him.

(x)     Defendants, *WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, were employed by defendants *CITY, DOC, BRANN, VILLALONA, FARRELL,* jointly and severally, at all times relevant to the allegations in this Complaint.

(xi)    Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, were aware of the situation at **DOC** but failed to do anything to further prevent or stop the condition(s). When defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, employees would come to defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, and voice concerns, defendants, jointly and severally, refused to take any actions.

(xii)   Upon information and belief, Defendants, *WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, previously had problems at defendant *DOC* and nothing was done due to said problems. Nevertheless, defendants, *WARDEN, CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and severally, were left unsupervised to continue the same conduct; specifically, allowing correctional personnel to recruit inmates to act as their enforcers to assault fellow inmates upon request of said correctional personnel or to control the facility as said inmates desired. Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, conduct of ignoring said misconduct continued at **DOC.** Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, would ignore

38

improper conduct and never disciplined defendants *CAPT. JD1, C.O.*
*MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* jointly and
severally.

(xiii) Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,*
jointly and severally, were aware of this widespread custom outlined in the
foregoing and failed to take any corrective action and resulted in a *defacto* policy
that the misconduct could be tolerated, otherwise swept under the rug or ignored.

The foregoing policy and custom by the defendants, *CITY, DOC, BRANN,*
*VILLALONA, FARRELL* and *WARDEN,* jointly and severally, employees became an
ongoing problem and regular course of business at **DOC** which led to the constitutional
violations and deprivations of plaintiff.

b.    **Failure to Train**

(i)    The conduct outlined in this complaint constituted patterns and customs that have
existed at **DOC** for more than three (3) decades.

(ii)   The long-term knowledge of numerous allegations of employee misconduct
and/or failures to abide by DOC Directives, specifically Directive 6007R-A and
the recruitment of inmates to act as violent enforcers to control the jail by
committing violence and assaults against fellow inmates, put defendants, *CITY,*
*DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally,
on notice of the conditions at **DOC.**

(iii)  Despite the long-term knowledge of numerous allegations of employee
misconduct and/or failures to abide by DOC Directives, specifically Directive
6007R-A and the recruitment of inmates to act as violent enforcers to control the

jail by committing violence and assaults against fellow inmates, defendants, **CITY, DOC, BRANN, VILLALONA, FARRELL** and **WARDEN,** jointly and severally, failed to implement training procedures for the staff at **DOC** to ensure that the employees were adequately equipped to deal with situations (as outlined in the complaint) in a lawful and proper manner and/or to provide inmates, like plaintiffs, another outlet to report and request protective custody.

(iv)   As to requesting protective custody, the only training that was provided to the staff at **DOC** during the time plaintiff and other inmates were being exploited was in form of verbal instruction to verbally report these requests to their superior, such as the current area Captain. There was no formal training on prohibiting, identifying and reporting requests by inmates for protective custody. Nor are there any reports dedicated to deal with these requests for protective custody by inmates. Nor were there any training instructions or manuals on recognizing inmates who may need protective custody.

Upon information and belief, as to recruitment of inmates to act as enforcers on behalf of correctional personnel, the only training that was provided to the staff at **DOC** during the time plaintiff and other inmates were being exploited was in form of verbal instruction to verbally report these requests to their superior, such as the current area Captain. There was no formal training on prohibiting, identifying and reporting recruitment of inmates by fellow correctional personnel officers to act as enforcers and commit assaults against fellow inmates. Nor are there any reports dedicated to deal with these claims against correctional

40

personnel by fellow staff. Nor were there any training instructions or manuals on recognizing said conditions.

(v)     Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, failed to offer any training to the defendant **DOC** staff about how to interact with male inmates who have troubled and vulnerable backgrounds and how to protect them for further assault by fellow inmates, specifically after requesting for said protection.

Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, failed to offer any training to the defendant **DOC** staff about how to anonymously report illegal conduct of fellow correctional personnel, specifically recruitment of inmates to commit assaults against fellow inmates.

(vi)    Given the known frequency of the inmate-on-inmate assaults and indiscretions taking place between defendant *DOC* correctional staff with inmates, defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, should have had some form of training in place for the employees to handle a situation involving an inmate's request for protective custody. Further, a policy or procedure should have been implemented to further protect said inmates to ensure that defendant **DOC** staff cannot merely state that said inmate never made a request for protective custody. Due to the lack of training on the law through employee handbooks, memos, pamphlets, videos, field-training, courses and other training materials, the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, were and are

deliberately indifferent to the "highly predictable consequence," specifically, violations of constitutional rights of individuals like plaintiff.

c.    **Failure to Supervise**

(i)    At all relevant times, Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN*, jointly and severally, were supervisors.

(ii)   The above-mentioned supervisors had a duty to supervise their subordinates and ensure that nothing nefarious, untoward or unconstitutional behavior or actions were taking place at **DOC.**

(iii)  However, these supervisors turned a blind-eye and failed to remedy said unconstitutional conduct resulting in deprivation and violation of the constitutional rights of plaintiff as alleged in the complaint.

(iv)   The above stated gross negligence and indifference by the supervisors at **DOC** created an atmosphere that permitted malfeasance amongst employees, low morale for conscientious employees and engendered an environment where wrongdoers got away unpunished and the conscientious employees and vulnerable inmates were either punished or suffered further assault and/or retaliation.

(v)    The supervisors' deliberate indifference in supervising their employees resulted in violation of plaintiff's constitutional rights and he suffered physical and psychological injuries.

d.    **Failure to Enact Safeguards or a Formal Complaint Procedure**

(i)    Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, lack of implementation of a complaint/grievance procedure

42

when such implementation had been clearly warranted, and an utter disregard to the Constitution, the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, were deliberately indifferent to the rights of individuals like Plaintiff. Plaintiff filed a Grievance as to defendant **DOC's** failure to protect him which was rejected by defendant **DOC** as the claims stated were not "grievable" offenses.

(ii)    Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, are and were aware that an employee at defendant **DOC** would encounter situations such as those described in this complaint and would be forced to make difficult decisions as to whether to report the incident or to turn a blind eye to the misconduct. Despite having said knowledge and notice, defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, were deliberately indifferent in failing to set measures into place to avoid wrongful choice/conduct by employees that would lead to the violation of the constitutional rights of individuals like plaintiff resulting in a *de facto* policy with the full force of the law and the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, incorrectly assume that their employees would exercise common sense even though they were not trained to confront and adequately address these specific types of misconduct.

(iii)   Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, have failed to take any action to have training in place for their employees, such as defendants, *CAPT. JD1, C.O. MOOREHEAD, C.O.*

43

*MCNEIL, C.O. MARTIN* and *C.O. JD2*, jointly and severally, as to how to handle situations as outlined in this complaint. This lack of action and formal training by the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, has led their employees to be ill-equipped to adequately address the conditions faced by plaintiff and other inmates similarly situated and thus resulting in constitutional violations.

(iv)   The inadequacy or lack of training by the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, for its defendant **DOC** employee, specifically defendants, *CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* has directly caused the constitutional violations and injuries to plaintiff.

(v)   In addition, defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, failure to enact a complaint procedure for inmates and innocent employees (who had not engaged in said conduct) that would hold wrongdoers accountable for their actions or inactions, caused individuals, like plaintiff, to be physically and psychologically abused by defendants employees who turn a blind eye to the unlawful and despicable conduct. The incidents complained of by plaintiff are not isolated incidents, but a pattern and custom that is widespread at defendant **DOC**.

(vi)   This lack of accountability further empowers individuals like defendants to continue to engage in unlawful conduct knowing that they would walk away with impunity while at the same time causing constitutional injuries to individuals like plaintiff.

(xiv)   Defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, should have been aware that prisoner abuse in its jail system is rampant and male inmates who have been previously assaulted by fellow inmates are among the most vulnerable and that there was a need for defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN*, jointly and severally, to set up programs so that inmates have an opportunity to make a complaint against the jail custodians who have power and control over them. However, defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, failed to enact any of such programs or policies and as a result, individuals like plaintiff or innocent employees' complaints were unheard and inmates continued to suffer harm.

164.   Due to defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, policies, the custom and practice or the lack of the defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, to implement (a) meaningful training materials, (b) adequate disciplinary measures, (c) additional supervision, (d) adequate hiring and retention procedures, (e) complaint/grievance procedure when such implementation has been clearly warranted, (f) allow for anonymous reporting of correctional personnel illegal conduct by fellow correction officers, and an utter disregard to the Constitution, defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and severally, have been deliberately indifferent to the rights of its citizens, like plaintiff. The foregoing failure to act or disregard a known occurrence that needed to be rectified, defendants, *CITY, DOC, BRANN, VILLALONA, FARRELL* and *WARDEN,* jointly and

severally, instead turned a blind-eye to these unconstitutional practices and was the proximate cause of the injuries suffered by plaintiff.

***TENTH CAUSE OF ACTION***
*Federal – Cruel and Inhumane Treatment*

165.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "118" of the complaint, as if the same were set forth herein more fully and at length.

166.   That as a direct and proximate result of the intentional acts of the defendants, ***CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN*** and ***C.O. JD2,*** all committed under color of state law and under their authority as correction officers and captains employed by the defendants, ***CITY, DOC, BRANN, VILLALONA, FARRELL*** and ***WARDEN***, jointly and severally, and while acting in the scope of their employment, and pursuant to authority vested in them by defendants, ***CITY, DOC, BRANN, VILLALONA, FARRELL*** and ***WARDEN***, jointly and severally, the defendants, ***CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN*** and ***C.O. JD2,*** failed to protect plaintiff from inhumane living conditions which constitute cruel and inhumane treatment in violation of the Eighth Amendment, causing plaintiff to suffer permanent physical and psychological injuries.

167.   Defendants, ***CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN*** and ***C.O. JD2,*** jointly and severally, intended to punish plaintiff by forcing him to be incarcerated in the above conditions.

168.   The above actions of defendants, ***CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN*** and ***C.O. JD2,*** jointly and severally, were not related to a legitimate governmental objective.

169.    The actions of defendants, *CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL,*
*C.O. MARTIN* and *C.O. JD2,* jointly and severally, created a substantial risk to plaintiff's safety
and life.

170.    That by engaging in the foregoing acts, practices and course of conduct,
defendants, *CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,*
used their positions as a uniformed City of New York correction officer and captain for improper
purposes, subjecting the plaintiff to humiliation, degradation, physical abuse, deprivation of his
rights, privileges and immunities as guaranteed to him by the First, Fourth, Sixth, Eighth and
Fourteenth Amendments to the United States Constitution and in that the plaintiff was denied his
protected rights to be free from unlawful and inhumane living conditions.

171.    That none of the aforesaid acts by the gang members upon the plaintiff were done
as a consequence of any improper, criminal or suspicious conduct on the part of the plaintiff or
anyone on his behalf.

### ELEVENTH CAUSE OF ACTION
*Medical –Deliberate Indifference*

172.    Plaintiff repeats and realleges each and every allegation contained in paragraphs
numbered "1" through "118" of the complaint, as if the same were set forth herein more fully
and at length.

173.    That the acts of the defendants, their correction officers, captains, wardens,
doctors, nurses, supervisors, agents, servants, officers and employees, by failing to treat the
plaintiff's injuries created a serious risk to the plaintiff's health and safety.

174.    That the acts of the defendants, their correction officers, captains, wardens, doctors, nurses, supervisors, agents, servants, officers and employees, by failing to treat the plaintiff caused his injuries to worsen and were prolonged.

175.    That the defendants, their correction officers, captains, wardens, doctors, nurses, supervisors, agents, servants, officers and employees, were aware that failing to treat the plaintiff's injuries was detrimental to the plaintiff's health, safety, and life.

176.    That the failure of the defendants, their correction officers, captains, wardens, doctors, nurses, supervisors, agents, servants, officers and employees, to treat the plaintiff's injuries resulted in permanent damage, continuous and further medical treatment, collapsed lung, permanent damage to lung, partial disability with severe damage to respiratory system and unnecessary and wanton infliction of pain to the plaintiff.

177.    That the acts of the defendants, their correction officers, captains, wardens, doctors, nurses, supervisors, agents, servants, officers and employees, were in total disregard to the safety of the plaintiff's health and welfare.

178.    That the defendants, their correction officers, captains, wardens, doctors, nurses, supervisors, agents, servants, officers and employees, had no medical justification in not medically treating the plaintiff's injuries.

179.    That the defendants, their correction officers, captains, wardens, doctors, nurses, supervisors, agents, servants, officers and employees, had no medical justification in not providing prompt medical treatment to the plaintiff for his injuries.

180.    That the defendants, their correction officers, captains, wardens, doctors, nurses, supervisors, agents, servants, officers and employees, acted with deliberate indifference to the health of the plaintiff.

181.    That by reason of the foregoing, the plaintiff has suffered substantial damages.

182.    That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

### TWELFTH CAUSE OF ACTION
#### (INTENTIONAL INFLICTION OF EMOTIONAL HARM)

183.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "118" of the complaint, as if the same were set forth more fully and at length herein.

184.    As a result of the above, defendants, jointly and severally, their agents, servants, employees and correction officers, specifically defendants, *CAPT. JD1, C.O. MOOREHEAD, C.O. MCNEIL, C.O. MARTIN* and *C.O. JD2,* intentionally, wantonly, carelessly, recklessly and/or negligently engaged in extreme, offensive and outrageous conduct measured by the reasonable bounds of decency tolerated by decent society standards thereby inflicting mental and emotional distress upon Plaintiff.


*WHEREFORE*, plaintiff, *TYRIECK GREY*, demands judgment as follows:

A.    As to the first cause of action: In favor of plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Two Million ($2,000,000.00) Dollars, and punitive damages against the defendants in the sum of Two Million ($2,000,000.00) Dollars.

B.    As to the second cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

C.    As to the third cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

D.    As to the fourth cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

E.    As to the Fifth cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

F.    As to the Sixth cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

G.    As to the Seventh cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

H.    As to the Eighth cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00)

50

Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

   I. As to the Ninth cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

   J. As to the Tenth cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

   K. As to the Eleventh cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

   L. As to the Twelfth cause of action: In favor of the plaintiff and against defendants, jointly and severally, compensatory damages in the amount of Ten Million ($10,000,000.00) Dollars, and punitive damages against the defendants in the sum of Ten Million ($10,000,000.00) Dollars.

   M. Attorneys fees and expenses pursuant to 42 U.S.C. §1988.

   N. And for such other and further relief as just and proper.

Dated:     New York, New York
             November  _30_ , 2020

Yours, etc.,

**Devon M. Radlin**
Attorney for Plaintiff
TYRIECK GREY
112 W 34th Street – 18th Floor
New York, New York 10120
Tel.No:(212)406-9200
Email: Devon@LawDMR.com

52

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYREICK GREY,

                              Plaintiff,

        -against-

CITY OF NEW YORK, NEW YORK CITY DEPARTMENT
OF CORRECTION, CYNTHIA BRANN, ANGEL
VILLALONA, TIMOTHY D. FARRELL, WARDEN OF
GEORGE R. VIERNO CENTER, CAPTAIN JOHN DOE 1.
CORRECTION OFFICER FNU MOOREHEAD,
CORRECTION OFFICER FNU MCNEIL, CORRECTION
OFFICER FNU MARTIN and CORRECTION OFFICER
JOHN DOE 2,                   Defendants.

---

                              COMPLAINT

                         **DEVON M. RADLIN**
                        Attorney for Plaintiff
              Office & Post Office Address, Telephone
                  **112 W 34th Street – 18th Floor**
                        **NEW YORK, N.Y. 10120**
                           **(212) 406-9200**

---

To:                                        Signature (Rule 130-1.1-a)


_____

Print name beneath                         Attorney(s) for

---

Service of a copy of the within            is hereby admitted.
Dated,


_____

                                           Attorney(s) for

---

Please take notice
ⁱ NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within names court on
ⁱ NOTICE OF SETLEMENT
that an order of which the within is a true copy will be presented for settlement to the HON.
one of the judges of the within names court, at                                    on
                                           Yours, etc.
To:                                        DEVON M. RADLIN
                                           Attorney for Plaintiff
Attorney(s) for:                           **112 W 34th Street – 18th Floor**
                                           **NEW YORK, NY 10120**